# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAWN MARIE SHOCKEY,** ) <br> On Behalf of Herself and ) <br> All Others Similarly Situated, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **HUHTAMAKI, INC.** ) <br> ) <br> **Defendant.** ) <br> _____) | Case No. 09-CV-2260-JAR-DJW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA (Doc. 35) and defendant's Unopposed Request for Oral Argument (Doc. 61). The parties have fully briefed the issues, and the Court has reviewed their arguments, attachments, and the parties' supplemental submissions. In light of the record provided, the Court finds additional oral argument is unnecessary. For the reasons stated below, the Court grants plaintiffs' motion for conditional certification of this collective action.[1]

## **I.    Standard**

Plaintiffs seek to conditionally certify their claim brought under the Fair Labor Standard Act ("FLSA") as a collective action under 29 U.S.C. § 216(b). An action under the FLSA may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[2] Unlike a class action under Federal Rule

---

[1] When the Second Amended Complaint was filed, there were two representative plaintiffs. Plaintiffs filed the present motion and one plaintiff subsequently withdrew from the action. For purposes of addressing this motion, the Court continues to refer to plaintiffs in the plural, as thirteen plaintiffs have already opted in.

[2] 29 U.S.C. § 216(b).

of Civil Procedure 23, to participate in an FLSA collective action, all plaintiffs must "give[ ] [their] consent in writing to become such a party," and it must be "filed in the court in which such action is brought."[3]

Before notice is sent to putative plaintiffs to inform them of the pending action, it must be conditionally certified as a collective action. The court may certify an opt-in collective action so long as the aggrieved employees are similarly situated.[4] Section 216(b) does not define "similarly situated." The Tenth Circuit has approved an *ad hoc* case-by-case basis for determining whether employees are "similarly situated" for purposes of § 216(b).[5] This involves a two-step inquiry.[6] The first step occurs at the "notice stage" of the proceedings. Here, the court determines if certification is proper for purposes of sending notice of the action to potential class members.[7] At this stage, the court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."[8] This standard is very lenient and typically results in conditional certification.[9]

After discovery is completed, defendant usually files a motion to decertify, and the court applies a stricter standard to assure that plaintiffs are actually similarly situated.[10] During this

---

[3] 29 U.S.C. § 216(b).

[4] *See id.*

[5] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[6] *Id.* at 1105.

[7] *Id.* at 1102.

[8] *Id.* (internal alterations omitted); *Gieseke v. First Horizon Home Loan, Corp.*, 408 F. Supp.2d 1164, 1166 (D. Kan. 2006) (citations omitted).

[9] *Thiessen*, 267 F.3d at 1103; *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).

[10] *Thiessen*, 267 F.3d at 1102–03.

second stage, the court reviews a number of factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required [] before instituting suit."[11]

## II. Background

Plaintiffs filed this action on May 15, 2009, and filed their Second Amended Complaint on January 6, 2010. The allegations of plaintiffs' Second Amended Complaint and sworn statements are summarized as follows.

Plaintiff Dawn Shockey brought this action on behalf of herself and all others similarly situated, against her former employer, defendant Huhtamaki, Inc. ("Huhtamaki"), for violating the FLSA by failing to fully compensate its employees for overtime work performed "off the clock."[12] Huhtamaki operates eleven plant locations in eleven states that manufacture various types of paper products relating to food distribution and storage, but plaintiffs only request certification of the action with regard to ten of defendant's facilities.[13] Defendant engaged in a practice and policy of willfully failing to pay overtime compensation due employees who worked at its manufacturing facilities. In particular, defendant required its nonexempt plant employees to arrive at work before each shift to perform work, and stay late after each shift to perform work, but failed to compensate them for this time. Defendant's time clocks were programmed to round employees' time in such a way that it denied employees overtime pay in

---

[11]*Id.* at 1103; *Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2009 WL 352603 at *4 (D. Kan. Feb.12, 2009).

[12]When the Second Amended Complaint was filed, Lillie Chapman was also a class representative, but she has subsequently withdrawn from the action. *See* Docs. 55, 57, 59.

[13]Plaintiffs do not include the facility in Malvern, Pennsylvania in their motion for conditional certification.

3

violation of the FLSA.

Huhtamaki previously operated eleven facilities under various corporate names in eleven states, including De Soto, Kansas; Fulton, New York; Los Angeles, California; Albertville, Alabama; Hammond, Indiana; Sacramento, California; Waterville, Maine; Coleman, Michigan; New Vienna, Ohio; Phoenix, Arizona; and Malvern, Pennsylvania. On or around January 1, 2010, the facilities were consolidated under defendant's corporate identity: Huhtamaki, Inc.

Dawn Shockey, named plaintiff, was employed by defendant from September 2008 through March 30, 2009, at the De Soto, Kansas facility, formerly operated as Huhtamaki Consumer Packaging, Inc. While employed there, she was required to perform work before and after her scheduled shift as an integral and indispensable part of the principal activities of performing her job. Defendant treated her as a nonexempt employee under the FLSA. Like plaintiff, defendant employs other similarly-situated nonexempt employees at its eleven facilities who are also required to perform work before and after their work shifts as an integral and indispensable part of the principle activities of performing their jobs.

Plaintiff states that they are all similarly situated in that they are all subject to defendant's policy, plan or procedure of failing to compensate facility employees for work performed both before and after their shifts that is integral and indispensable to the principle activities of performing their jobs. Defendant implements this policy at its eleven facilities using a "Ceridian" timekeeping system that rounds away time worked by these employees in defendant's favor. Plaintiff alleges that defendant's conduct was willful, and brings this action on behalf of all employees within three years from the commencement of the action who have not been properly compensated for overtime work performed.

Since this action was commenced, fifteen plaintiffs have opted in by filing "Consent to Join" forms with the Court. Two plaintiffs have subsequently withdrawn their consent to join, leaving fourteen plaintiffs involved in this litigation at the present time. Plaintiffs attached to their motion sixteen sworn statements by employees working at five of defendant's ten facilities. The Court considers the fourteen sworn statements from the opt-in plaintiffs in support of the allegations in the Second Amended Complaint.

The sworn statements are provided by employees holding various job titles, who worked in three of defendant's facilities in New Vienna, Ohio, Waterville, Maine, and De Soto, Kansas.[14] These employees held positions as printer techs, packers, quality technicians, carton handlers, molders, machine operators, warehousers, and rough finish stackers, smooth finish molding operator, and palletizer operator. Each employee alleges he or she was a nonexempt, hourly employee who was required to be present at work a specific number of minutes before and after his or her assigned shift, in order to perform work that was "a necessary and integral part of my job." They were regularly required to perform work before their shifts in amounts varying between five and twenty minutes, and they were required to work after their shifts in amounts varying between five and fifteen minutes. Because each facility had a timekeeping system that rounded away pre- and post-shift time, the hourly employees at those facilities were denied overtime compensation for the work they were required to perform before and after their scheduled shifts.

Although not all ten facilities are represented among these sworn statements, plaintiffs attached an Interrogatory, completed by defendant, wherein defendant states that all ten facilities

---

[14](Doc. 36, Ex. B.)

use the Ceridian system for timekeeping and payroll, but each facility has its own payroll administrator.[15] Additionally, defendant explained how different facilities programmed their timekeeping system to round minutes at the beginning and end of each employee's shift. If an employee clocked-in before his or her shift was scheduled to begin, seven to forty-five minutes may have been rounded away, forwarding the clock to the employee's normal start time. If an employee clocked-out after his or shift was scheduled to end, five to fourteen minutes may have been rounded away, returning the clock to the employee's normal finishing time. The precise minutes rounded at each facility could be programmed and re-programmed over time. Defendant notes that "exceptions to the time card are approved by a supervisor so that employees are credited for all time actually worked." Although each facility programmed their timekeeping system differently, each facility programmed some form of rounding into its timekeeping system such that an hourly employee would be denied pay for time he or she may have actually worked.

Defendant noted that four of its facilities are governed by collective bargaining agreements. And, in July 2009, its facility in Phoenix, Arizona was closed.

## III. Discussion

Plaintiffs' current motion asks the Court to conditionally certify the action as a collective action under § 216(b) of the FLSA for all nonexempt employees at ten of defendant's facilities for three years from the Court entering its order to the present; appoint Dawn Shockey and her counsel as class representatives and class counsel;[16] order the parties confer on a proposed notice to potential class members; and require defendants to provide a list of all employees constituting

---

[15](Doc. 36, Exs. A & C.)

[16]The motion asks that Lillie Chapman also be appointed as class representative, but Chapman withdrew from the action after this motion was filed. *See* Docs. 55, 57, 59.

the class, including their contact information.

Plaintiffs' motion is before the Court at the notice stage of review. The parties have not engaged in discovery on the merits of plaintiffs' claims and certainly have not completed discovery.[17] The scheduling order only provided deadlines for limited discovery on the motion for conditional certification, and a trial date has not yet been set. As the parties do not dispute that the present motion is pending before this Court at the first stage, the Court applies a lenient notice-stage analysis, reviewing the allegations in plaintiffs' Second Amended Complaint and sworn statements, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."[18]

Generally, courts in this district have limited the scope of their review on a motion for conditional certification to the allegations in plaintiffs' complaint and supporting affidavits.[19] Plaintiffs, however, have produced deposition testimony and other discovery in support of their allegations.[20] At this initial stage, the Court is required to apply the notice-stage analysis leniently. Although both parties have attached deposition transcripts and battling declarations,

---

[17] *See Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *2 (D. Kan. July 27, 2005) (applying first-stage analysis even though discovery had been conducted).

[18] *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[19] *Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 434 & n.4 (D. Kan. 2007) (declining to consider defendant's additional evidence at the "notice stage" because plaintiff is only required to produce substantial allegations and supporting affidavits or declarations) (collecting cases); *see Gipson v. S.W. Bell Tel. Co.*, No. 08-cv-2017-EFM/DJW, 2009 WL 1044941, at *3 n.22 (D. Kan. Apr. 20, 2009); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004).

[20] *See Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006) (noting that the Tenth Circuit only appears to require "substantial allegations," but agreeing to consider evidence provided by plaintiffs in support of their motion); *see also Thiessen*, 267 F.3d 1095, 1102, 1108 (noting that, at the notice-stage, a court "requires nothing more than substantial allegations," but, in evaluating the second stage, the Court noted that "[a] district court considering a motion to certify [or decertify] is entitled to look past the pleadings and examine the evidence produced during discovery . . . .").

the Court declines to resolve factual disputes.[21] As discussed below, plaintiffs have presented substantial allegations that they were together the victims of a common policy, sufficient to warrant conditional certification.

In opposing plaintiffs' motion, defendant challenges plaintiffs' allegations that they are "similarly situated" for purposes of conditional certification under § 216(b). First, defendant argues that plaintiffs' sworn statements fail to identify any specific tasks plaintiffs actually performed before or after their shifts that may have been compensable. Because plaintiffs have not alleged facts demonstrating that their time was compensable, defendant argues its timekeeping practices did not violate the law. However, plaintiffs have stated in their sworn statements that their supervisors required them to perform pre-shift and post-shift tasks that they believed were "a necessary and integral part of my job." Later, plaintiffs can elaborate on the tasks they were required to perform, which may be distinct to their specific job responsibilities. At the notice stage, plaintiffs are not required to show that their job duties are identical.[22] Plaintiffs have alleged they are all nonexempt, hourly employees subjected to the same unlawful policy, that is, they were required to perform pre- and post-shift work while defendant

---

[21]*Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008) ("even assuming that plaintiffs had submitted evidence that could be considered contradictory, the fact that evidence exists negating plaintiffs' claims does not warrant the denial of conditional certification where plaintiffs nonetheless have presented substantial allegations supporting the existence of a policy"); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *2 (D. Kan. Oct. 17, 2005) (deciding to only consider the pleadings and affidavits filed by plaintiffs because, "at this point, the Court is not prepared to weigh the evidence"); *Whalen v. United States*, 85 Fed. Cl. 380, 384 (Fed. Cl. 2009) ("In the process, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.") (citation and internal quotation marks omitted).

[22]*See Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (declining to require identical job duties before conditionally certifying a collective action, as such analysis applies at the second stage); *see also Underwood v. NMC Mortgage Corp.*, No. 07-2268-EFM, 2009 WL 1322588, at *3 (D. Kan. May 11, 2009) (considering, under the second-stage analysis, the similarity of employees' job duties, geographical location, supervision, and salary).

automatically rounded away any pre- and post-shift time expended at work. Plaintiffs allege this policy applied to all hourly, nonexempt employees who clocked-in to work before or after their shifts, regardless of the specific tasks they were required to perform during that time.[23]

Defendant denies the existence of any "single decision, policy or plan" denying employees overtime pay for off-the-clock work. Defendant argues that plaintiffs were "frequently" compensated for overtime work performed. But the Court notes that the presence of intermittent lawfulness does not negate plaintiffs' allegations that there was a general pattern of unlawfulness. Defendant relies on its Employee Handbook and collective bargaining agreements, which state that employees are to be paid for all time worked and for overtime as required by state and federal law. However, the presence of a written policy is not evidence that the policy was enforced, and certainly does not negate the possibility of an unwritten policy or general practice to the contrary.[24] And the fact that opt-in plaintiffs stated they were "required by Huhtamaki" to arrive early or stay late to perform work before and after their shifts, supports plaintiffs' claims that they were required to perform work that the time clock automatically rounded away from them.[25]

Defendant argues that plaintiffs' claims are too individualized to warrant a collective action; although all facilities used the same automated timekeeping system (Ceridian), each facility established its own timekeeping rules. Furthermore, employees were able to notify their supervisors of overtime worked so that supervisors could make adjustments to ensure that

---

[23]*See Barnwell*, 2008 WL 5157476, at *5.

[24]*See Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009).

[25]*See id.*

employees were paid for all time they actually worked. Although defendant suggests that any practice of denying overtime compensation might have been *supervisor*-specific, plaintiff has shown that *most* facilities engaged in time-rounding. In fact, because each facility programmed its own time clock, all hourly employees who were required to clock-in were subject to this programmed policy, even if the details of that policy were facility-specific. The fact that defendant was able to succinctly explain each facility's rounding policy in its answer to plaintiffs' interrogatory negates defendant's claim that no identifiable policy existed. In addition, it appears from plaintiffs' sworn statements that the time clock worked against employees who were required to arrive early and/or stay late for the purpose of performing tasks integral to their jobs. The Court is not persuaded that an employer can avoid conditional certification so long as each facility is alleged to have violated the FLSA in varying increments.[26]

Defendant argues that the presence of a collective bargaining agreement ("CBA") at four of its facilities "provide[s] further evidence that the plaintiffs who are subject to those agreements are not 'similarly situated' to the plaintiffs at other facilities." But defendant has offered no basis to find the presence of CBAs in this case—the contents of which are largely unknown to this Court—make employees at those facilities so dissimilar as to exclude them from the class or prevent them from asserting a claim under the FLSA. In fact, plaintiffs argue that the CBA at these facilities have no bearing on plaintiffs' present FLSA claim.[27] At this point,

---

[26]*See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 539–40 (S.D. Tex. 2008) (noting, at second stage of analysis, that an informal policy requiring off-the-clock work without pay may vary at each location nationwide, but that such variation did not warrant decertification).

[27]Plaintiffs note the FLSA exemptions for certain collective bargaining agreements set forth in 29 U.S.C. § 207(b)(1) and (2), as well as defendant's interrogatory response that these exemptions do not apply. To the extent these exemptions may or may not apply to the facilities in this case, such defenses are better presented on a motion to decertify.

10

beyond mere suggestion, defendant has given no practical justification for this Court to exclude these employees from the action.

Finally, defendant contends its time clock rounding system did not violate the FLSA. Although some rounding is generally permitted under federal regulations, it must be "used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."[28] Plaintiffs allege that four of defendant's facilities rounded time in favor of the employer only; and five of its facilities rounded time in increments exceeding fifteen minutes. The parties have not yet engaged in discovery on the merits of plaintiffs' claim, and the Court is not in a position to rule on the merits of plaintiffs' FLSA claim at this time.[29] At this point, plaintiffs' allegations are substantial.

Defendant relies upon non authoritative decisions, of other district courts that motions for conditional certification. This Court is unpersuaded by the analysis in *Basco v. Wal-mart Stores Inc.*,[30] *Ray v. Motel 6 Operating, Limited Partnership*,[31] and *Pacheco v. Boar's Head Provisions Co.*,[32] where the courts collapsed the two-step analysis and applied both steps simultaneously, even weighing the evidence and making credibility determinations.[33] This Court declines to do

---

[28] 29 C.F.R. § 785.48(b).

[29] *Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 435 (D. Kan. 2007) (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006)).

[30] No. Civ.A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004).

[31] No. 3-95-828, 1996 WL 938231 (D. Minn. Mar. 18, 1996).

[32] 671 F. Supp. 2d 957 (W.D. Mich. 2009).

[33] *Basco*, 2004 WL 1497709, at *4; *Ray*, 1996 WL 938231, at *4; *Pacheco*, 671 F. Supp. 2d at 960, 962–966.

so.[34]

Defendant also relies on Judge Murguia's decision in *Stubbs v. McDonald's Corp.*[35] *Stubbs* involved a claim that defendant willfully mis-classified plaintiffs and other first and second assistant managers as "exempt," yet under-staffed its restaurants so as to require them to perform the duties of hourly employees in excess of forty hours a week without overtime compensation.[36] In *Stubbs*, plaintiffs' allegations made each plaintiff's specific job duties an integral part of the mis-classification claim, such that the court found plaintiffs' allegations did not demonstrate a single policy and collective action was not warranted.[37] The motion for conditional certification was scantily supported by two affidavits of a husband and wife who had no exposure to first assistant managers, whom they claimed to represent, or other persons similarly situated in any other facility who expressed an interest in joining the collective action.[38] Thus, the case is not analogous. Here, plaintiffs produced sworn statements by multiple employees and interrogatories by defendant showing that defendant regularly engaged in time-rounding at more than one facility, affecting more than one nonexempt hourly employee who was regularly required to perform work before and after his or her shift.

To the extent defendant is asking this Court to consider the factual setting of each

---

[34]*See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106–07 (10th Cir. 2001) (noting that, in the second stage, trial court weighed the evidence and made factual findings in determining whether plaintiffs were "similarly situated," and as a result "the district court essentially deprived plaintiffs of their right to have the issues decided by a jury, or to at least have the court determine, under summary judgment standards, whether there was sufficient evidence to send the issue to the jury.").

[35]227 F.R.D. 661 (D. Kan. 2004); *see Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 & n.2 (D. Kan. July 27, 2005) (analyzing *Stubbs* in light of *Thiessen*).

[36]*Stubbs*, 227 F.R.D. at 665.

[37]*Id.* at 665–66.

[38]*Id.* at 663–66.

employee at each facility under each supervisor, the distinct job duties of each employee, or defendant's defenses to individual plaintiffs, the Court finds such arguments premature.[39] Defendant attempts to argue that individual facts and circumstances will dominate this case, i.e., what tasks were performed off-the-clock and how long those tasks were performed.[40] But the Tenth Circuit has specifically stated that these issues are to be reserved for the second stage, after discovery is completed and the evidence is more fully developed to allow the Court to consider the merits of plaintiffs' claim, the scope of the alleged violation, or the vitality of defendant's defenses.[41] On a motion for conditional certification, the Court does not reach the merits of plaintiffs' claim.[42] To the extent defendant has identified possible defenses or justifications for decertification, such arguments will be more fully considered should defendant decide to file a motion for summary judgment or motion for decertification.

At this stage, the Court finds that plaintiffs have met their light burden. Plaintiffs have set forth "substantial allegations that the putative class members were together the victims of a single decision, policy or plan"[43] of failing to compensate nonexempt employees for performing

---

[39]*See Gipson v. S.W. Bell Tel. Co.*, No. 08-cv-2017-EFM/DJW, 2009 WL 1044941, at *3 (D. Kan. Apr. 20, 2009) (declining to compare job duties at the first stage).

[40]Additionally, defendant briefly suggests that the compensable time was *de minimis*, but did not provide any support for this argument. The Court finds this argument to be premature as well. In fact, the Tenth Circuit has held that "[t]here is no precise amount of time that may be denied compensation as de minimis." *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998). Furthermore, in addition to the amount of time, the Tenth Circuit considers three other factors, which defendant has not presently discussed: "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Id.* at 1333–34.

[41]*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001).

[42]*Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 435 (D. Kan. 2007) (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166 (D. Kan. 2006)).

[43]*Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

work activities off-the-clock. There may be some facility-level differences in how the rounding policy was programmed into each time clock, or how each plaintiffs' damages will be calculated.[44] Nevertheless, at this stage, plaintiffs have produced substantial allegations that more than one facility—in fact, most of defendant's facilities—engaged in a practice of rounding time away from employees before and after their shifts, thereby denying them compensation for pre- and post-shift work they were required to perform as part of their jobs.[45] The Court "requires nothing more."[46] Plaintiffs have shown they are similarly situated for purposes of conditional certification, and the Court finds that notice of this collective action should be sent to all putative class members at defendant's ten facilities and the parties should proceed to discovery on this claim.[47]

## IV. Notice to Putative Plaintiffs

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."[48] Although plaintiffs have not yet submitted a proposed

---

[44]*Gieseke*, 408 F. Supp. 2d at 1168 (noting that individual differences in damages does not prevent conditional certification).

[45]*Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *3–*4 (D. Kan. Dec. 9, 2008) (conditionally certifying a similar collective action); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218 (S.D. Ala. Dec. 10, 2008) (same); *see also Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 687 (D. Kan. 2009).

[46]*Thiessen*, 267 F.3d at 1102 (internal alterations omitted).

[47]*See Barnwell*, 2008 WL 5157476, at *4 ("The fact that the specific tasks that corrections officers performed off-the-clock might have varied (or that the duration of those tasks might have varied) in no way undermines plaintiffs' substantial allegations that CCA required employees to perform work both before and after shifts without compensation. Plaintiffs' allegations are sufficient for purposes of sending notice to the potential class.").

[48]*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

notice, the Court finds that putative plaintiffs should be notified of this collective action.[49] The parties should confer and a proposed notice should be submitted for the Court's review, as directed in the Scheduling Order.[50] In preparation for the distribution of notice to putative plaintiffs, defendant is directed to provide plaintiffs with a list of all nonexempt employees who are part of the designated class by the date specified below. As plaintiffs have alleged that defendant engaged in this policy and practice willfully, the Court applies a three-year statute of limitations period to the putative class members.[51]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Unopposed Request for Oral Argument (Doc. 61) is **denied**; and plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA (Doc. 35) is **granted.** The Court conditionally certifies plaintiffs' claims under § 216(b) of the FLSA for all of defendant's nonexempt employees at its ten facilities located in De Soto, Kansas; Fulton, New York; Los Angeles, California; Albertville, Alabama; Hammond, Indiana; Sacramento, California; Waterville, Maine; Coleman, Michigan; New Vienna, Ohio; and Phoenix, Arizona; for three years from the Court entering its Order to the present;

**IT IS FURTHER ORDERED THAT** plaintiff Dawn Shockey and her counsel shall act as class representative and counsel for the class;

**IT IS FURTHER ORDERED THAT** the parties meet and confer in an attempt to reach

---

[49]*See id.*

[50]*See* Doc. 23 at 4.

[51]29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135 (1988) (applying three-year statute of limitations to willful violations of the FLSA, and defining willful as "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute").

an agreement on a proposed notice to be sent to potential class members, including a proposed deadline for the potential opt-in plaintiffs to join this action by filing consents with the Court. If agreement is reached, the parties shall submit the proposed notice to the Court for approval within fourteen (14) days of the Court's order. If the parties are unable to reach an agreement on a proposed notice, plaintiffs shall file a motion within ten (10) days after the Court grants plaintiffs' motion for conditional certification seeking approval of the proposed form of notice, and defendants shall have ten (10) days to respond to plaintiffs' motion and shall submit an alternative proposed form of notice. Once notice is decided upon by the Court, defendant shall have fourteen (14) days to provide a list of all employees constituting the class, with their last known addresses, phone numbers, social security numbers, and dates of employment in an agreeable format for mailing.

**IT IS SO ORDERED.**

Dated: August 9, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE