IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| **DAWN SHOCKEY, et al.** ) | |
| ) | |
| On Behalf of Themselves and ) | |
| All Others Similarly Situated, ) | |
| ) | |
|       Plaintiff, ) | Case no.: 09-CV-2260-JAR-DJW |
| ) | |
| vs. ) | |
| ) | |
| **HUHTAMAKI, INC.** ) | |
| ) | |
|       Defendant. ) | |

**MOTION FOR PROTECTIVE ORDER
& SUPPORTING MEMORANDUM**

**COMES NOW** the Plaintiff Dawn Shockey, on behalf of herself and all others similarly situated, and pursuant to Fed.R.Civ.P. 26(c)(1), hereby seeks a Protective Order from this Court regarding seven notices of deposition presented by the Defendant. In support of this Motion, the Plaintiff states as follows:

### I. Nature of the Matter:

The Plaintiff is seeking a Protective Order under Fed.R.Civ.P. 26(c)(1) regarding seven notices of depositions sent by the Defendant. The Defendant's counsel wants to depose these seven persons at their Kansas City, Missouri office. These persons are located throughout the country. Due to the burden of expenses for these persons to travel to Kansas City in relation to their actual damages, coupled with the well accepted remedial nature of collective actions under the Fair Labor Standards Act (FLSA), the Plaintiff is requesting that this Court issue an order requiring that counsel travel to these deponents' locations, cover the costs of their travel to Kansas City, or that the depositions be conducted via phone/video.

## II.  Statement of Relevant Facts:

On May 15, 2009, the Plaintiff Dawn Shockey filed a Complaint against the Defendant alleging a violation of the Fair Labor Standards Act (FLSA) for unpaid overtime.  On August 27, 2009, a corrected First Amended Complaint was filed.  Plaintiff alleges that at ten of Defendant's facilities, its hourly employees were required to perform work off the clock.  In turn, this denied these employees overtime pay.  At the crux of the Plaintiff's claim was the Defendant's "Ceridian" time keeping system which had a rounding mechanism.  The Plaintiff alleged that this system would round away time from the beginning or end of the class members' shifts when work was being performed.  On January 4, 2010, the Plaintiff filed a Second Amended Complaint.  This Complaint modified the Defendant party.  Prior to this Amendment, Huhtamaki operated a number of separate corporate divisions.  During litigation, these were all consolidated into Huhtamaki, Inc. (the current Defendant).  The Second Amended Complaint was filed to rename the appropriate corporate entity.

On February 1, 2010, the Plaintiff filed for conditional class certification under § 216(b) of the FLSA on behalf of all hourly employees working at ten of Defendant's facilities (Docs. 35-36).  Prior to responding to this Motion, the parties conducted discovery.  This included the Defendant taking six depositions including the named Plaintiff Shockey and five others who consented to join this case prior to class certification.  The Plaintiff and Defendant had a disagreement at the time about where the depositions were to take place.  The Plaintiff offered to present these people by phone/video conference.  The Defendant's position was that these persons had to be presented in person in Kansas City (the location of the lawsuit).  The Defendant rejected the Plaintiff's proposal for phone/video conference depositions.  In turn, the Plaintiff relented, and the five out of state deponents incurred travel costs to come to Kansas City

for their depositions[1] (this included: Betty Hilterbran, OH; James Hunter, OH; Mark Waits, OH; Joseph Martin, ME; and Tim Martin, ME).  On March 17, 2010, the Defendant filed its response to Plaintiff's Motion (Doc. 54).  After filing a reply brief (Doc. 58), the Court issued an order on August 9, 2010 granting conditional class certification as requested by Plaintiff (Doc. 64).

On November 17, 2010, the Court approved the notice to be mailed to the class members (Doc. 68).  On December 6, 2010, the Plaintiff mailed notices to 3,067 class members (Doc. 69).  Including the persons who joined the case prior to certification, there are a total of 110 plaintiffs in this collective action.  On August 12, 2011, this Court entered a second Scheduling Order (Doc. 84).  In this order, the second phase of discovery has a deadline of February 29, 2011.

On October 12, 2011, the Defendant informed Plaintiff that they would like to depose seven more opt-in plaintiffs.  This included Sharol Gosset, Sanford, MI; Craig Boyd, Oswego, NY; Charles Kebert, Hammond, IN; Kayser Eugenio, Los Angeles, CA; Sina Nielsen, Phoenix, AZ; Cassandra Story, Sacramento, CA; and Jeffrey Cuaras, Fairfield, ME.  (See **Exhibit A**).  The parties again could not agree on where these persons should be presented for deposition.  Once again, the Plaintiff offered to have these conducted by phone, but Defendant continued with the same position described above.  (Exhibit A).  In turn, on November 7, 2011, the Defendant noticed up these depositions to take place in Kansas City for December 6-9, 2011.  (**Exhibit B**).

In the course of litigation, the Defendant provided the Plaintiff a payroll data sampling for five of the 10 facilities at issue in this case.  This permitted the Plaintiff to perform an analysis regarding the time clock rounding that occurred at each facility.  From this data, the Plaintiff was able to compute estimated overtime pay lost for the class members.  The Plaintiff

---

[1] These people had to incur airfare, hotel, travel, and meal costs.  In addition, for those who worked, days off from work also needed to be arranged resulting in a loss of personal time.

3

provided these estimates to the Defendant for all the class members. Regarding the seven deponents set forth above, their estimated damages for lost overtime under the FLSA are as follows: Gosset: $3916.72; Boyd: $1379.33; Kebert: $147.67; Eugenio: $1764.37; Nielsen: $1200.73; Story: $417.57; and Cuaras: $917.85.

The travel costs for each of these persons can be summarized as follows:

| Name | travel | Airfare | Hotel | Car/meals | Total Travel | OT Due: | Net: |
|---|---|---|---|---|---|---|---|
| Craig Boyd | Oswega NY to KCMO | $323.25 | $120.00 | $160.00 | $603.25 | $1,379.33 | $776.08 |
| Kayser Eugenio | Los Angeles to KCMO | $300.80 | $120.00 | $160.00 | $580.80 | $1,764.37 | $1,183.57 |
| Sharol Gossett | Sanford, MI to KCMO | $642.05 | $120.00 | $160.00 | $922.05 | $3,916.72 | $2,994.67 |
| Charles Kebert | Hammond, IN to KCMO | $139.40 | $120.00 | $160.00 | $419.40 | $147.67 | ($271.73) |
| Sina Nielsen | Phoenix, AZ to KCMO | $254.35 | $120.00 | $160.00 | $534.35 | $1,200.73 | $666.38 |
| Cassandra Story | Sacramento, CA to KCMO | $347.75 | $120.00 | $160.00 | $627.75 | $417.57 | ($210.18) |
| Jeffrey Cuaras | Fairfield, ME to KCMO | $373.75 | $120.00 | $160.00 | $653.75 | $917.85 | $264.10 |

### III. Question Presented:

Is it an undue burden and expense under Rule 26(c)(1) for these opt-in plaintiffs to incur travel expenses given the remedial nature of collective actions under the FLSA and their relatively insignificant claims for relief?

### IV. Argument & Authority:

The FLSA has a broad remedial purpose. This is especially true in the collective action context of § 216(b). The purpose behind collective actions is permitting numerous persons, with otherwise relatively small claims, to pursue their claims in one action in order to preserve the parties and judicial resources. The seven deponents at issue fall squarely within this purpose. They did not choose the District of Kansas as their forum. Instead, this forum chose them. One cannot argue that these persons were free to not opt into this case and pursue their claims in their local jurisdictions. First, their individual claims are so relatively small it is doubtful legal

counsel could be obtained.  Second, and most importantly, it would defeat the remedial purpose of the FLSA collective action by having numerous individual lawsuits asserting the same claims all across the country.  Defendant requiring these seven deponents to incur travel costs would effectively significantly reduce the value of their claims and likely force them to exit this collective action regardless of the merits behind their claims.  Courts have recognized this and reject requiring a collective action deponent with limited resources, and relatively small claims, to incur substantial travel costs to appear for a deposition.

Under Rule 26, the district court has great discretion establishing the place and time of a deposition.  In re Standard Metals Corp., 817 F.2d 625, 628 (10th Cir. 1987).  This Court has broad discretion to decide what degree of protection is required under a protective order.  MGP Ingredients, Inc. v. Mars, Inc., 245 F.R.D. 497, 500 (D.Kan. 2007).  In order to not appear for a deposition where the case is filed, he or she will have to show good cause for not being required to appear in this district.  Stubbs v. McDonald's Corp., 2005 WL 375662, at *3 (D.Kan. Jan. 26, 2005).

In Fiore v. Goodyear Tire, 2010 WL 4537750 (M.D.Fla. Nov. 3, 2010), the defendant sought to compel a FLSA opt-in residing in Texas to appear in Florida for a deposition. Just like situation at hand, the Fiore plaintiff sought a protective order from the court under Rule 26(c)(1) based on undue burden and expense.  Id. at *1.  The district court upheld the magistrate judge's decision to enter a protective which stated:

> forcing an out of state opt-in plaintiff to travel hundreds of miles to take a deposition would undermine the purpose of this collective action, and effectively destroy any benefits gained by proceeding as a class under the FLSA. It would be unreasonable to force Wandell to attend a deposition in Tampa, Florida. Wandell did not choose the Middle District as his forum, the forum was chosen for him.

Id.

The same conclusion was reached in Allen v. Sears Roebuck and Company, 2010 WL 141644 (E.D.Mich. April 5, 2010).  The defendant sent notices of deposition for twenty persons who opted into the FLSA collective action.  Id. at *1.  The depositions were to all take place at plaintiff counsel's office.  Regarding the travel involved, plaintiff pointed out that the opt-ins were mostly unemployed, live on fixed incomes, and reside in thirteen different states.  Id.  The plaintiff argued that it would be unduly burdensome and contravene the remedial nature of the FLSA to require them to travel.  Id.  The court agreed and entered a protective order stating that only deponents within 100 miles of the counsel's office would have to appear, unless the defendant agrees to pay for all their travel expenses.  Id. at *2.

In Brasfield v. Source Broadband Services, LLC, 255 F.R.D. 447 (W.D.Tenn. 2008), a discovery dispute arose regarding the deposition location for those who opted into the FLSA case.  Id. at 448.  The issue was whether deponents from various states would have to travel to Memphis for deposition.  In seeking a protective order, the plaintiffs argued that the FLSA has broad remedial purposes.  Id. at 449.  The collective action mechanism allows employees, who often have small claims, to pool their resources in order to prosecute their claim.  Id.  The plaintiffs argued that opt-ins did not choose their forum, but instead simply joined an existing lawsuit in order to vindicate their rights in a cost effective manner.  Id.  The costs associated with their travel to another state would undermine any benefits gained by proceeding as a FLSA class.  Id.  In an attempt to reach a resolution before coming to the court, the plaintiffs offered to present the out of state persons for deposition via phone or video conference.  Id.  This was rejected by defendant.  Citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1999), the court agreed that one of the important benefits of a FLSA collective action was allowing employees to file actions as a group that might not otherwise get filed

individually because common resources may be pooled together.  Id. at 450.  This efficient resolution is an important policy consideration behind the FLSA.  Id.  The Brasfield court also agreed that the opt-ins did not choose the forum, it chose them.  Id.  Had they not joined the lawsuit, but instead pursued their claims at their individual locations, it would "destroy the benefit to the judicial system of a collective action and efficient resolution of the matter."  Id.  Requiring the opt-ins to travel to Memphis would place a burden on them that would cancel the benefits of a collective action.  Id.  The court concluded that defendant failed to show any real necessity as to why these depositions needed to take place in person as opposed to phone or video.  Id.  Therefore, the out of state plaintiffs were not required to travel to Memphis.  Id.

Like the courts above, the district of Kansas has long recognized the broad remedial purpose of collective actions under the FLSA.   See, Pivonka v. Bd. of County Com'rs of Johnson County, Kansas, 04-2598-JWL, 2005 WL 1799208 (D. Kan. July 27, 2005) (citing Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)); Johns v. Stewart, 57 F.3d 1544, 1557 (10th Cir. 1995).  When faced with this issue in the past, on two occasions the District of Kansas has concluded that FLSA opt-ins must travel to the location of where the lawsuit was filed.  However, in both instances, the plaintiffs failed to disclose the value of the deponents' lost overtime claims. Therefore, the courts were not able to analyze the remedial nature of FLSA claims compared to the relative amount of the claims at issue.  This failure to disclose the value of the claims does not exist here.

In Gipson v. Southwestern Bell Telephone, 2008 WL 4499972 (D.Kan. Oct. 1, 2008), this Court declined to enter a protective order regarding the production of opt-in plaintiffs for deposition in Kansas City.  The plaintiff had sought an order requiring the opt-in deponents located in Texas be produced in El Paso instead of Kansas City.  Id. at *1. The court found that

plaintiffs failed to meet their burden that the travel for depositions was unduly burdensome or expensive. Id. at *5.  This was due to plaintiffs' failure to show that incurring between $400-$500 in expenses was an unreasonable hardship in light of plaintiffs' "substantial claims for back pay, overtime, liquidated damages, and attorneys' fees." Id.

In Clayton v. Velociti, Inc., 2009 WL 1033738 (D.Kan. April 17, 2009), the defendant in a FLSA collective action sought to require numerous opt-in plaintiffs from various states to appear in Kansas City, Missouri for depositions. Id. at *1.  The plaintiffs sought a protective order based on the argument that travel costs would create undue burden and expense to travel for a half day deposition. Id. at *2.  As part of their argument, the plaintiffs relied upon the broad remedial nature of FLSA collective actions.  In particular, the collective procedure allows persons with relatively small claims, that they would probably not pursue on their own, to pool their resources. Id.  The court acknowledges this Court's findings in Gipson, supra. Id. at *3. When addressing the remedial nature of the FLSA argument, the Clayton court points out that plaintiffs failed to provide any evidence as to what each deponent's damages are. Id. at *4.

> Without such information, however, the Court finds no basis for assuming that the claim of an individual plaintiff is so modest in amount as to support a finding of undue burden with regard to his or her deposition. With this lack of information Plaintiffs further fail to provide enough information to carry a burden to show good cause for a protective order, as required by Fed.R.Civ.P. 26(c)(1).

Id.  Because of this failure, the plaintiffs were not successful.

In Clayton, the plaintiffs alternatively sought an order requiring the depositions to be conducted via phone/video conference. Id. at *5.  The court acknowledges that the Manual for Complex Litigation recognizes the reduction in costs associated with such depositions. Id. These are appropriate for relatively brief depositions that do not involve numerous documents. Id.  But, the party seeking such depositions must show a specific hardship tied to the individual's

8

circumstances.  Id.  No evidence of hardship was presented by the plaintiffs.  Arguing relative travel costs as being hardship failed because they did not provide any evidence regarding the value of their respective claims.

Unlike Gipson and Clayton, the Plaintiff here has presented evidence regarding the value of the deponents' claims in relation to the travel costs.  As the Court will see, the claims for overtime are not "significant" as described in Gipson.  Regarding each deponent, the Plaintiff states as follows:

Craig Boyd:  After travel costs, the net value of Mr. Boyd's claim would be $776.08.  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, his net value would be $2155.41.  Mr. Boyd also suffers from COPD and arthritis in his legs.  He also has to endure three breathing treatments per day.[2]

Kayser Eugenio: After travel costs, the net value of Mr. Eugenio's claim would be $1183.57.  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, his net value would be $2937.94.  Given the likely outcome of any resolution of this case regarding payment to Mr. Eugenio, he has requested to be withdrawn from this case if he has to incur these expenses.

Sharol Gossett:  After travel costs, the net value of Ms. Gossett's claim would be $2994.67.  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, her net value would be $6911.39.  Given the likely outcome of any resolution of this case regarding payment to Ms. Gossett, she has requested to be withdrawn from this case if she has to incur these expenses.

Charles Kebert:  After travel costs, the net value of Mr. Kebert's claim would be ($271.73).  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, his net value would be $137.67.  This clearly cannot be considered significant.

Sina Nielsen:  After travel costs, the net value of Ms. Nielsen claim would be $666.38.  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, her net value would be $1867.11.

Cassandra Story:  After travel costs, the net value of Ms. Story's claim would be ($210.18).  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, her net value would be $207.39.  This clearly cannot be considered significant.

---

[2] Plaintiffs are in the process of obtaining a doctor's letter that travel is difficult given these conditions.  It will be provided to the Court upon receipt.

9

Jeffrey Cuaras:  After travel costs, the net value of Mr. Cuaras' claim would be $264.10.  Even if one assumes plaintiff will get all three years for damages under the FLSA, and liquidated damages, her net value would be $1181.95.

The Plaintiff would argue that the "significant" relief being sought standard from Gipson is not met by any of these deponents.

As an alternative, the Plaintiff has offered to make the deponents available by phone/video.  Given the relatively small amount of damages involved, it would make little economic sense for these persons to incur the travel expenses.  Also, as noticed, these depositions will be only a half day at the most.  Regarding document reviews, the prior depositions of class members reflects a range of 4 to 11 exhibits per deponent.  None of these documents are complex in nature as discussed in Clayton.  For these reasons, the circumstances in this case vary from Clayton and would support depositions conducted via phone/video.

## V.  Good Faith Efforts

Pursuant to Rule 26(c)(1)  and D.Kan.Rule 37.2, counsel for Plaintiffs verify that good faith efforts were made to resolve this issue prior to seeking this protective order.   Plaintiffs' counsel would refer this Court to Exhibit A regarding the communications on this issue.

**WHEREFORE**, the Plaintiff respectfully request this Court enter an order requiring: 1) that the parties to travel to the location of the deponents for their depositions, or 2) defendant to incur the travel costs for deponents to travel to Kansas City, Missouri, or 3) the depositions to take place via telephone/video.

Respectfully submitted,

/s/ Brendan J. Donelon
Brendan J. Donelon,  KS #17420
802 Broadway, 7th Floor
Kansas City, Missouri 64105
Tel:     (816) 221-7100
Fax:    (816) 472-6805
brendan@donelonpc.com

/s/ Daniel W. Craig
Daniel W. Craig, KS.Fed. #78146
*Of counsel*
1125 Grand Blvd., Ste. 900
Kansas City, MO 64106
Tel: 816-221-7772
Fax: 816-283-3823
DCraig@DanCraigPC.com

/s/ Jason Brown
Jason Brown, KS.FED. #70700
**BROWN & ASSOCIATES, L.L.C.**
204B U.S. 169 Hwy.
Trimble, MO 64492
Tel: 816-505-4529
Fax: 816-357-2101
kclawyerbrown@yahoo.com

**ATTORNEYS FOR PLAINTIFFS**

### Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing was sent on November 21, 2011 via email address as registered with the Court and under the requirements set forth by the District of Kansas under the policies for ECF Management and standing Orders to:

Sara E. Welch
Patricia A. Konopka
**Stinson Morrison Hecker, LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106-2150
(816) 842-8600 (telephone)
(816) 691-3495 (facsimile)
swelch@stinson.com
pkonopka@stinson.com

**ATTORNEYS FOR DEFENDANT**